# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

JOSEPH BRADY HOUSEKNECHT,

    Plaintiff,

    v.

NANCY BERRYHILL,[1]

    Defendant.

CIVIL ACTION NO. 3:16cv-01703

(CONNER, C J.)
(SAPORITO, M.J.)

## REPORT AND RECOMMENDATION

Plaintiff, Joseph Brady Houseknecht, is seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claims for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1383(c)(3).

This matter has been referred to the undersigned United States Magistrate Judge to prepare a report and recommended disposition pursuant to the provisions of 28 U.S.C. §636(b) and Rule 72(b) of the

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. §405(g), Acting Commissioner Nancy A. Berryhill is automatically substituted as the named defendant in place of the former Commissioner of Social Security.

Federal Rules of Civil Procedure. For the reasons expressed herein, we have found that the final decision of the Commissioner of Social Security is supported by substantial evidence. Accordingly, it is recommended that the final decision of the Commissioner denying Houseknecht's claims for benefits be **AFFIRMED**, and that Houseknecht's request for a new hearing or award of benefits be **DENIED**.

## I.      *Background and Procedural History*

Houseknecht, is an adult individual, born on July 19, 1982. Houseknecht was thirty years of age at the time of his alleged onset of disability, which made him a "younger person" under the Commissioner's regulations whose age generally does not affect his ability to adjust to other work. Houseknecht resides in the Middle District of Pennsylvania.

On April 20, 2013, Houseknecht protectively filed his application for benefits under Titles II and XVI of the Social Security Act. In both applications, he alleged that he became disabled on August 16, 2012. (Tr. 9) Houseknecht's alleged impairments included: arthritis, chronic back pain, lumbar back pain with L4-4 herniated disc, spinal stenosis without neuroforaminal compression and bulging disc in his back. He alleged that these impairments became completely disabling on August 16, 2012. His

claims were initially denied on July 25, 2013. On August 5, 2013, Houseknecht filed a written request for an administrative hearing. His request was granted. On November 10, 2014, Houseknecht appeared and testified at a hearing before Administrative Law Judge Michelle Wolfe in Wilkes-Barre, Pennsylvania. Plaintiff was represented by his attorney, William Allen Shaw. Additionally, Vocational Expert Carmine Abraham (the "VE") also appeared and testified. (Tr. 9).

On February 6, 2015, the ALJ issued an unfavorable decision in which she concluded that, considering Houseknecht's age, education, work experience, and residual functional capacity, there are jobs that he can perform that exist in significant numbers in the national economy. Houseknecht then filed a timely complaint on August 15, 2016, in this court. (Doc. 1). The Commissioner's timely answer to the complaint was filed October 28, 2016. (Doc. 8).

The plaintiff was born on July 19, 1982, and at the time of the administrative hearing he was thirty-two years of age. (Tr. 68). He completed his GED in 2001. (Tr. 69, 192). Houseknecht previously worked part-time in a grocery store, stocking frozen food until he quit the position in July 2014, claiming that he could not handle the pain in his lower back,

hips, knees, the constant twisting, lifting, and cold, along with the unloading of the trucks, and the pulling of the pallet jacks. (Tr. 70,79). Aileen Colunio, FNP-C, noted in her reports, however, that Houseknecht quit his job because he did not get a promotion. She stated that his departure from his job was not due to medical reasons. Finally, she stated he was applying for disability. (Tr. 313).

Houseknecht stated that he is always in pain, even while riding in a vehicle, being on his feet, or engaged in any kind of movement. (Tr. 80). He stated that the pain radiates down his leg *(which leg is not specified in the record)* just above his knee. (Tr. 81). Even when he is sleeping he cannot get comfortable. (Tr. 71).

Houseknecht lives in a two story home in Athens, Pennsylvania with his fiancé. His two sons, ages four and ten, stay with him on the weekends. (Tr. 68).

Houseknecht stated that he wakes up around 4:35 a.m. When he has had a restless night, he sleeps late and wakes up 6:30 – 7:00 a.m.(Tr. 83). He claims that once he is awake he cleans the house, vacuums, straightens-up, and washes the dishes. (Tr. 73, 81). During the day, Houseknecht takes care of his youngest son, they play inside, and take

walks around the block. (73-74).

He stated that he does mow the lawn with a push mower, and rakes. (Tr. 74). Houseknecht enjoys watching television, but occasionally gets up and moves around because if he sits too long, he becomes uncomfortable. (Tr. 74-75). He does not use a computer, but does read the newspaper. (Tr. 75). He does not grocery/clothes shop. He tries to avoid walking and standing for any length of time, and riding in a vehicle. (Tr. 75, 84). He reported he does not possess a current drivers license. (Tr. 69).

Houseknecht stated that on the weekends when his older son is with him, he does play football. (Tr. 77).

Houseknecht stated that he can usually walk for 20-25 minutes before having to take a break, he could stand for 30-35 minutes, adjusting from one leg to another, and he stated that he lifts the laundry basket and carries the groceries bags. (Tr. 83). He estimated that he cannot lift greater than ten pounds. (Tr. 77).

During his hearing, Houseknecht testified that the medication does not alleviate the pain. He always feels pressure, aches, and sharp pain. (Tr. 84).

## II.    Standard of Review

When reviewing the denial of disability benefits, the Court's review is limited to determining whether those findings are supported by substantial evidence in the administrative record. *See* 42 U.S.C. § 405(g) (sentence five); *id.* § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In

determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before the Court, therefore, is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

To receive disability benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *id.* § 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a); *id.* § 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment[2] that makes it impossible to do his or her previous work or any other substantial gainful activity[3] that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); *id.* § 1382c(a)(3)(B); 20 C.F.R. § 404.1505(a); *id.* § 416.905(a).

The Commissioner follows a five-step sequential evaluation process in determining whether a claimant is disabled under the Social Security Act. 20 C.F.R. § 404.1520(a); *id.* § 416.920(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment;[4] (4) whether the claimant is able to do past relevant

---

[2] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); *id.* § 1382c(a)(3)(D).

[3] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. § 404.1510; *id.* § 416.910.

[4] An extensive list of impairments that warrant a finding of disability

*(continued on next page)*

work, considering his or her residual functional capacity ("RFC");[5] and (5) whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. *Id.* § 404.1520(a); *id.* § 416.920(a). The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 42 U.S.C. § 423(d)(5); *id.* § 1382c(a)(3)(H)(i); 20 C.F.R. § 404.1512; *id.* § 416.912; *Mason*, 994 F.2d at 1064. Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 404.1512(f); *id.* § 416.912(f); *Mason*, 994 F.2d at 1064.

---

based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1.

[5] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his or her impairment(s) and any related symptoms (e.g., pain). 20 C.F.R. § 404.1545(a)(1); *id.* § 416.945(a)(1). In assessing a claimant's RFC, the Commissioner considers all medically determinable impairments, including those that are not severe. *Id.* § 404.1545(a)(2); *id.* § 416.945(a)(2).

## IV. DISCUSSION:

### A. The ALJ's decision denying Houseknecht's Claim for Disability

In her February 6, 2015, written decision denying Houseknecht's claims, the ALJ found that Houseknecht meets the insured status requirements of the Social Security Act through December 31, 2017. (Tr. 11). At step one, the ALJ found that Houseknecht had not engaged in substantial gainful activity since his alleged onset date. (Tr. 11). At step two, the ALJ found that Houseknecht had the medically determinable severe impairment: lumbar degenerative disc disease. (Tr. 12). The ALJ also found that Houseknecht had the medically determinable non-severe impairment: tobacco use. (Tr. 12). At step three, the ALJ found that Houseknecht did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Between steps three and four of the sequential evaluation process, the ALJ assessed Houseknecht's RFC. After evaluating the relevant evidence of record, the ALJ found that Houseknecht had the RFC to

perform light work as defined in 20 C.F.R. §§404.1567(b) and 416.967(b), except that:

> [t]he claimant may lift/carry 10 pounds frequently and up to 20 pounds occasionally. He can sit, stand, and walk 6 hours each in an 8-hour workday. He is limited to only occasional balancing, stooping, crouching, crawling, kneeling, and climbing, but never on ladders, ropes, or scaffolds. He is limited to only occasional pushing/pulling with the lower extremities and he must avoid concentrated exposure to temperature extremes of cold, wetness, vibrations, and hazards including moving machinery and unprotected heights.

(Tr. 13).

In making her factual findings with respect to Houseknecht's RFC, the ALJ was required to evaluate credibility of Houseknecht's statements pursuant to 20 C.F.R. §§ 404.1529 and 416.929, and Soc. Sec. Rulings 96-4p and 96-7p, and to assess the weight of the opinion evidence of record pursuant to 20 C.F.R. §§404.1527, 416.927, and Soc. Sec. Rulings 96-2p, 96-5p, 96-6p, and 06-3p. In doing so, the ALJ noted that in terms of physical impairments, Houseknecht was diagnosed with degenerative disc disease. He was seen in 2011 for back pain and spasms. His physical exam was unremarkable, his x-ray was negative, and he was prescribed muscle relaxers, and therapy. (Tr. 268). By February 2013, his exam

revealed minimal tenderness, no spasms, negative straight leg raise test and intact motor strength. (Tr. 291). By March 2014, an MRI revealed L4-5 degenerative disc protrusion without stenosis indicative of central or forminal neural impingement. (Tr. 293, 302). In April 2013, his exam was negative for tenderness, his reflexes were normal neurovascularly, and he had no weakness of the lower extremities. At that time, Dr. Ibraham prescribed Houseknecht Duragesic (fentanyl) patches, Norco acetaminophen and hydrocodone), and, ibuprofen. He noted that Houseknecht did not need to be on "chronic narcotic therapy" and by May 2013, he was referred to a pain clinic (Tr. 253-65). Houseknecht underwent only one epidural injection in February 2014, with no further follow-up. In April 2014, he began treating with a new primary care physician and continued to complain of back pain and sciatica. On exam, he had some decreased range of motion, positive straight leg raise bilaterally, and "mild" weakness of the right leg but no significant findings. (Tr. 299-301).

In April 2013, the record reflects that Houseknecht was treating with Aileen Colunio, FNP-C, pain management nurse practitioner. By August 29, 2013, Houseknecht returned with worsening back pain and stated that

he had seen a neurosurgeon who decided he was not yet a candidate for surgery. Moreover, Houseknecht did not want surgery. (Tr. 316). Houseknecht was encouraged to have injections, but stated that he hates needles and he heard various negatives about injections. (Tr. 316). By August 29, 2013, Houseknecht complained about pain and was unhappy with any treatment options suggested. (Tr. 316). The record also shows at that time, Houseknecht was not working, but he had applied for a job at a grocery store. (Tr. 316). On December 19, 2013, Houseknecht stated that he continues to work hard around his house and he cares for his children. Houseknecht was waiting to hear from the interventional pain clinic. (Tr. 315). The record reflects that despite Houseknecht's stated position that he left his job because he could no longer perform it because of pain, he had actually quit because he was not promoted to department manager. (Tr. 313). Nurse Colunio's records reflect that on July 17, 2014, Houseknecht continued to complain of pain but he was not willing to undergo physical therapy. (Tr. 314). In August 2014, the records show that Nurse Colunio discussed the importance of moving the correct way, but Houseknecht continued to exacerbate of the pain. His prescriptions were continued and he was referred for cortisone injections. (Tr. 316). By

September 11, 2014. Houseknecht had an injection and the sciatica had improved, but his insurance disapproved further injections because he told the nurse that they did not help him. (Tr. 314).

Records of Nurse Colunio from December 4, 2014, reflect that Houseknecht was waiting for his disability and hoped that he could attend school to do something that will interest him. (Tr. 313). His treatment consisted only of medication management, MS Contin (morphine), oxycodone, and Soma (carisoprodal). As of December 2014, Houseknecht was doing well and there were no changes noted since his initial visit. (Tr. 14).

After weighing the evidence, the ALJ found that Houseknecht's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible, his treatment was routine and conservative, and he had no further extensive treatment. The evidence supported the ALJ's finding that Houseknecht retained the capacity engage in the type of work described by his RFC assessment.

At step four of the sequential evaluation process, the ALJ relied upon the testimonial evidence from VE Abraham. VE Abraham testified that Houseknecht's past relevant work included grocery store manager, a

mechanic assistant, a saw operator, a fork-lift operator, a machine packager, and order picker. VE Abraham testified that the demands of Houseknecht's past relevant work exceed the limits of his RFC. (Tr. 15-16). Relying on VE Abraham's testimony, the ALJ concluded that Houseknecht could not engage in any of his past relevant work. (Tr. 16).

At step five of the sequential evaluation process, the ALJ, once again, called upon VE Abraham in order to determine whether Houseknecht could engage in "other work" that existed in significant numbers in the national economy. After considering the factual findings made by the ALJ with respect to Houseknecht's age, education, work experience, and RFC, VE Abraham testified that such an individual could engage in occupations such as order filler (DOT #222.487-014), with 650 jobs available in the region and 10,000 jobs in Pennsylvania, sales clerk/store clerk (DOT #279.357-054), with 800 jobs available in the region and 15,000 jobs in Pennsylvania, and product assembler (DOT # 706.684-022) with 850 jobs available in the region and 40,000 jobs in Pennsylvania. (Tr. 87-88). Based on this information, the ALJ concluded that Houseknecht could engage in other work that existed in significant numbers in the national economy despite his medically determinable impairments. We agree.

**B.    The ALJ's decision to discount Dr. Robert Meikle's decision is supported by substantial evidence.**

The Commissioner's regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairments(s), and [a claimant's] physical or mental restrictions. 20 C.F.R. §§404.1527(a)(2), 416.927(a)(2). Regardless of its source, the ALJ is required to evaluate every medical opinion received. 20 C.F.R. §§404.1527(c), 416.927(c).

In deciding what weight to accord to competing medical opinions, the ALJ is guided by factors outlined in 20 C.F.R. §§404.1527(c) and 416.927(c). "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180 at *2. Treating sources have the closest ties to the claimant, and therefore their opinions generally are entitled to more weight. *See* 20 C.F.R. §§404.1527(c)(2), 416.927(c)(2)("Generally, we give more weight to opinions from your treating sources . . . "); 20 C.F.R. §§404.1502, 416.902 (defining treating source). Under some circumstances, the medical opinion of a treating

source may even be entitled to controlling weight. 20 C.F.R. §§404.1527(c)(2), 416.927(c)(2); *see also* Social Security Ruling 96-2p, 1996 WL 374188 (explaining that controlling weight may be given to a treating source's medical opinion only where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and it is not inconsistent with the other substantial evidence in the case record).

Where no medical source opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinions; length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention. 20 C.F.R. §§404.1527(c), 416.927(c). At the initial level of administrative review, State agency medical and psychological consultants may act as adjudicators. *See* Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *4. As

such, they do not express opinions -- they make findings of fact that become part of the determination.  *Id.*  However, 20 C.F.R. §§404.1527(e) and 416.927(e) provide that, at the ALJ and Appeals Council levels of the administrative review process, findings by nonexamining State agency medical and psychological consultants are evaluated as expert opinion evidence by nonexamining physicians and psychologists and must be addressed by the ALJ.  Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *6. Opinions by State agency consultants can be given weight "only insofar as they are supported by evidence in the case record."  Soc. Sec. Ruling  96-6p, 1996 WL 374180, at *2.  In appropriate circumstances, opinions from nonexamining State agency  medical or psychological consultants may be entitled to greater weight than the opinions of treating or examining sources.  *Id.* at *3.

Furthermore, as discussed above, it is beyond dispute that, in a social security disability case, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."  *Cotter*, 642 F.2d at 704. This principle applies with particular force to the opinion of a treating physician.  *See* 20 C.F.R. §§404.1527(c)(2), 416.927(c)(2)("We will always give good reasons in our notice of determination or decision for

the weight we give your treating source's opinion."). "Where a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)(*quoting Mason*, 994 F.2d at 1066)); *see also Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

Houseknecht argues that the ALJ should have afforded controlling weight to Dr. Meikle's opinions. It is the ALJ who has responsibility to evaluate medical opinions as the finder of fact, not a reviewing court. 20 C.F.R. §§ 404.1527, 416.927; *Chandler v. Comm'r of Soc. Sec.* 667 F.3d 356, 361 (3d Cir. 2009). ALJ's are required by the controlling regulations to consider whether a treating physician's opinion is supported and consistent with the record as a whole. The ALJ is not required to accept a treating physician's opinion uncritically, particularly when the opinion is not supported by clinical evidence, is internally inconsistent, or is not consistent with other record evidence. 20 C.F.R. §§ 404.1527(c)(c)(2), 416.927(c)(2). On April 29, 2014, Dr. Meikle advised Houseknecht to maintain a good stretching program and, when lifting, to squat and not bend. This was not a full evaluation and was afforded little weight. On October 8, 2014, Dr. Meikle completed a form for child support and

indicated that Houseknecht's conditions affect his ability to work. This form was completed solely for domestic relations purposes and was not an evaluation, therefore it was afforded little weight. Dr. Meikle also provided a lumbar evaluation indicating that Houseknecht could lift 20 pounds occasionally, up to 50 pounds rarely, and he could sit for only 4 hours and stand/walk less than 2 hours in an 8-hour day. He also noted that Houseknecht would miss four or more days of work per month. His opinion is inconsistent with his own notes where he assessed Houseknecht with low back pain. (Tr. 300). Dr. Meikle's assessment was inconsistent with Houseknecht's physical examinations, level of treatment, and actual level of activity.

As one court has stated, "Judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor," because "lay intuitions about medical phenomena are often wrong." *Schmidt v. Sullivan,* 914 F.2d 117, 118 (7th Cir. 1990). However, in this case the ALJ's assessment that Dr. Meikle's statement is inconsistent with his examination report which was prepared specifically for domestic relations is correct based upon the

record. Therefore, we find that the ALJ's decision to afford little weight to this medical statement is consistent and remand is unnecessary.

### C. The ALJ adequately presented the hypothetical question to include all of Houseknecht's limitations

One of the principal contested issues in this setting relates to the claimant's residual capacity for work in the national economy. There are two ways a claimant can frame a challenge to an ALJ's reliance on vocational testimony at step five. *Rutherford v. Barnhart*, 339 F.3d 546, 554 n.8 (3d Cir. 2005). First, the claimant can argue that the testimony cannot be relied upon because the ALJ failed to convey limitations to the VE that were properly identified in the RFC assessment. *Id.* Second, the claimant can argue that the VE's testimony cannot be relied upon because the ALJ failed to recognize credibly established limitations during the RFC assessment and thus did not convey those limitations to the VE. *Id.* In either scenario, as an evidentiary matter, the ALJ's error precludes reliance on the VE's response to the faulty hypothetical question. Challenges of the latter variety, like those raised in this case, are best understood as challenges to the RFC assessment itself. *Id.*

In this regard, the controlling legal standards are clear, and clearly defined. As the United States Court of Appeals for the Third Circuit has observed:

> Discussing hypothetical questions posed to vocational experts, we have said that "[w]hile the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." *Podedworny*, 745 F.2d at 218. A hypothetical question posed to a vocational expert "must reflect *all* of a claimant's impairments." *Chrupcala v. Heckler,* 829 F.2d 1269, 1276 (3d Cir.1987) (emphasis added). Where there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence. *Podedworny,* 745 F.2d at 218 (citing *Wallace v. Sec. of Health & Human Servs.,* 722 F.2d 1150, 1155 (3d Cir.1983)).

*Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002).

Houseknecht alleges that the ALJ's hypothetical is incomplete because he failed to identify all of Houseknecht's impairments and limitations. In response, the Commissioner asserts that the ALJ's RFC adequately accounts for all of Houseknecht's credibly established limitations. It is well established that the RFC, and by extension any

hypothetical question on which the ALJ relied, need only reflect those limitations that are credibly established by the record. *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). Thus, we are called upon to decide whether the ALJ improperly omitted Houseknecht's need for the use of intensive narcotic pain medication on a daily basis impacted his ability to sustain work activity.

In this case, the record did not reflect that the use of narcotic pain medication was affecting his work. In fact, Houseknecht's medications include morphine, oxycodone, and carisoprodol. (Tr. 247). Houseknecht testified that he had "little drowsiness" and "dizziness" depending on how much sleep he had the night before. (Tr. 73). Further, in the hypothetical question, the ALJ limited Houseknecht to avoidance of concentrated exposure to hazards, such as machinery and unprotected heights. (Tr. 13). There is no record that indicates Houseknecht's medications were affecting his work and/or daily living activities. We find that the ALJ adequately covered Houseknecht's demonstrated limitations.

Although the ALJ has the duty to assist a claimant in developing a full and fair record, *Ventura* 55 F.3d at 902, she is not required to "search out relevant evidence which might be available, since that would in effect

shift the burden of proof to the government." Rather, the ALJ's duty is to ensure that the evidence is sufficient to make a benefit determination and to resolve any material conflicts or ambiguities in the evidence. Furthermore, because Houseknecht was represented by counsel at the administrative level, the ALJ is entitled to assume that the claimant is making the strongest case possible for benefits. *Glenn v. Sec'y of Health & Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987). In this case, the ALJ complied with her duty to ensure that the record was fully developed.

Additionally, at the hearing, the ALJ questioned Houseknecht about why he thought he could not work, his medical treatment, and how he spent his day, including his activities. (Tr. 69-78). Houseknecht's counsel also questioned him. The ALJ did not limit the scope of the inquiry by counsel or otherwise impede the development of the record. The ALJ also questioned a vocational expert and allowed counsel to inquire as well. (Tr. 85-92). The ALJ allowed the record to be kept open and issued a subpoena for the records from Horsehead Medical. We find that the ALJ conducted a thorough and meaningful examination and had a well-developed record before her.

With regard to Houseknecht's suggestion that the record was not

fully developed due to bias on the part of the ALJ, we do not recommend remand on this ground. In assessing a bias claim, the court initially presumes "that the hearing officer is unbiased." *Schweiker v. McClure,* 456 U.S. 188, 195 (1982). The presumption is overcome only if the claimant demonstrates that the ALJ "displayed deep-seated and unequivocal antagonism that would render fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 556 (1994). "[T]he burden of establishing a disqualifying interest rests on the party making the assertion." *Schweiker,* 456 U.S. at 195-96. At no time did Houseknecht, who was represented by counsel, request that the ALJ recuse herself, or did he notify the Appeals Council of any bias. *See* 20 C.F.R. §§ 404.940, 416.1440 (explaining that if the claimant believes that the ALJ is biased, the claimant must, at his earliest opportunity, ask the ALJ to recuse herself, and then if the ALJ denies the request, the claimant may appeal to the Appeals Council).

Although Houseknecht presented the ALJ's general statistics and her denial rate, there was no specific argument. "Judicial independence cannot be subservient to a statistical study of the calls he has made during the contest." *In re Int'l Bus. Mach. Corp.,* 618 F.2d 923, 929 (2d Cir. 1980).

Our court has held that an ALJ's low approval rate, by itself, is an insufficient reason to warrant a remand. *Marconi v. Colvin*, No. 1:13-cv-02531, 2015 WL 1427795, at *8 (M.D. Pa. Mar. 27, 2015). Houseknecht claims that the ALJ is biased because she approved 22.8% of the cases that came before her over a five-year period, while the approval rate for her entire office is 39% and the national average is 44%. (Doc. 12, at 23-24). Houseknecht has not identified any legal or factual basis for his argument that these statistics show bias. The plaintiff provided no evidence to establish that the difference between this ALJ's approval rate and the average approval rate was significant, rather than merely due to chance. These percentages alone cannot show bias. *See Preble v. Astrue,* No. 3:10-cv-1896, 2012 WL 527058, at *4 (M.D. Pa. Feb. 16, 2012)(remand was inappropriate where despite the ALJ's higher denial rate than other ALJ's the plaintiff failed to present evidence that the ALJ was specifically biased against him). Likewise, Houseknecht's bald assertion that the ALJ has an inappropriate demeanor to claimants, (Doc. 12, at 23), lacks factual support. Houseknecht cannot prove judicial bias with mere allegations. Houseknecht's complaints fall short of the proof required to support a claim of bias. *Likety*, 510 U.S. at 555-56 ("noting that expressions of

impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display" do not establish bias). Here, we find that Houseknecht has failed to meet his burden to show a specific reason for disqualification.

Accordingly, we do not recommend remand on these grounds.

### V. Recommendation

Accordingly, for the foregoing reasons, **IT IS RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED** and that Houseknecht's requests for the award of benefits or remand for a new administrative hearing be **DENIED**.

s/ *Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
U.S. Magistrate Judge

Dated: August 4, 2017

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

JOSEPH BRADY HOUSEKNECHT,

    Plaintiff,

    v.

NANCY BERRYHILL,

    Defendant.

CIVIL ACTION NO.  3:16cv-01703

(CONNER, C J.)
(SAPORITO, M.J.)

## NOTICE

NOTICE IS HEREBY GIVEN that the undersigned has entered the foregoing Report and Recommendation dated  August 4, 2017. Any party may obtain a review of the Report and Recommendation pursuant to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may

accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Dated:  August 4, 2017              s/ *Joseph F. Saporito, Jr.*
                                    JOSEPH F. SAPORITO, JR.
                                    United States Magistrate Judge